# EXHIBIT A

LIGHTERING LLC, STARR                  §
INEMNITY & LIABILITY                   §
COMPANY, and AGCS MARINE               §
INSURANCE COMPANY                      §
                                       §
    Plaintiffs    §
                                       §
v.                                     §    Case 4:17-cv-03374
                                       §
TEICHMAN GROUP, LLC and                §
T&T OFFSHORE, INC.                     §
                                       §
    Defendants    §
                                       §

## DECLARATION OF KEVIN TEICHMAN

    I, Kevin Teichman, make the following declaration under penalty of perjury pursuant to 28 U.S.C. § 1746:

    1.    My name is Kevin Teichman. I am over 21 years of age and of sound mind, have personal knowledge of the facts stated in this affidavit, am authorized and competent to give the testimony contained in this Declaration, and I swear that the statements contained in this Declaration are true and correct.

    2.    At all times material to the matters made the subject of this litigation, I have been an officer of Teichman Group, LLC ("T&T"). In that capacity, I have interfaced with representatives of OSG Lightering, LLC ("OSG") regarding OSG's presence and activities on T&T's premises on Pelican Island, located at 2915 Todd Road, Galveston, Texas (the

Texas (the "Premises"), pursuant to a Master Service Agreement entered into as of January 1, 2011 (the "MSA"), and I have personal knowledge of the nature of OSG's presence and activities on and from Premises.

3.     A true and correct copy of the MSA is attached to and incorporated in this Declaration as Exhibit 1.

4.     I am a custodian of and have access to T&T's business records, have reviewed those records and summaries of those records, and have personal knowledge of the facts set forth in this Declaration.

5.     OSG's operations from T&T's facility on the Premises consisted exclusively of providing fenders and hoses for offshore lightering operations. In support of those operations, T&T provided to OSG:

    a.    Office and warehouse space (approximately 6,000 square feet);

    b.    Outside storage of fenders and hoses, which are not appurtenances of any vessel (the fenders are placed between various vessels and the hoses are used to pump petroleum products between various vessels) and a parking area (an area of approximately 44,300 square feet);

    c.    Dock space and near-dock storage space for a total of approximately 17,600 square feet);

    d.    Occasional loading and unloading by use of cranes of the fenders and hoses on OSG-chartered vessels; and

    e.    Other miscellaneous land-based tasks, such as assisting with testing/cleaning of fenders and hoses.

6.     An aerial photo the Premises is attached as Exhibit 2 and incorporated herein by reference. The areas used by OSG are marked with yellow shading. This survey shows that approximately 66,900 square feet of the Premises was used by OSG, of which approximately 17,600 square feet was dock or near dock outside storage space.

7.       OSG did not allow T&T employees to go aboard OSG's vessels.

8.       OSG engages in transferring petroleum products between shuttle vessels and large tanker vessels in the Gulf of Mexico. OSG did not bring tanker or lightering vessels to the Premises; even its smaller shuttle ships were too large and/or deep drafted to come there. The only vessels OSG occasionally brought to the Premises were smaller supply boats that carried the fenders and hoses offshore for support of operations between the tankers and shuttle ships, and returned them to the Premises for cleaning, repair, and storage.

9.       The fenders and hoses in question were stored on the Premises. They were put on many different vessels at various times and were not permanently assigned or physically connected to particular vessels or destined for use aboard a specifically identifiable vessel. The fenders and hoses were not treated as "cargo" stored for short periods between unloading and transport to some other destination. They were typically stored for fairly long periods (weeks or months) on the leased Premises before being placed back aboard OSG's vessels.

10.       Under the MSA, OSG provided T&T with a flat fee of $16,500 per month (lowered to $15,500 effective May 1, 2013 to accommodate OSG's financially distressed condition) plus additional charges for miscellaneous labor and equipment (forklift and crane) services. See the MSA, Exhibit 1 hereto, at pp. 2-4. There was no specific charge provided in the MSA, or ever charged to OSG, for use of the dock space at the Premises, nor was OSG entitled to or given any credit for not using the dock space.

11.       T&T kept daily reports of labor and equipment use provided to OSG. Those daily reports reflected loading and unloading of OSG vessels when those activities occurred,

as well as non-vessel related use of T&T equipment to move OSG equipment (fenders and hoses) back and forth on land. Those daily reports were used to prepare monthly invoices to OSG. T&T has provided OSG all the daily reports and invoices before and during this litigation.

12.     T&T's daily reports and monthly invoices (all of which are and have been in OSG's possession) have been accurately summarized by months on a document attached as Exhibit 3 to this Declaration and incorporated herein, which shows the charges for loading and unloading OSG's vessels, as well as other charges due under the MSA, from February 2013 to August 2017, which is the almost-five-year period preceding the accident in question.

13.     Exhibit 3 shows that of all amounts OSG paid to T&T from February 2013 through August 2017, which totaled approximately $1,307,887.83. An approximate maximum of $204,695.00 or 15.65% of the total was for vessel loading and unloading (maritime) services, with the remaining $1,103,192.83 or 84.35% representing rental of property and provision of various non-maritime services. A summary of the various charges by month is attached and incorporated herein by reference as Exhibit 4

14.     Attached to this Declaration as Exhibit 5 and incorporated herein are calendars that graphically depict the days that T&T provided vessel loading/unloading services to OSG vessels. Exhibit 5 is based on the same daily reports that are the basis for Exhibit 3. Exhibit 5 shows that T&T only provided OSG with vessel loading/unloading services on 199 days out of the 1,672 day period between February 1, 2013, and August 31, 2017, or 11.9 % of days.

15. The MSA provides, on page 14, paragraph 14, that it will remain in effect for four (4) years from January 1, 2011, i.e., to January 1, 2015. During the period between January 1, 2011, and January 1, 2015, T&T invoiced OSG month for all charges due per the terms of the MSA, and OSG paid those charges monthly. The terms under which OSG used the Premises and related services did not change in any material way after January 1, 2015, up through, including, and beyond the date of the accident giving rise to this case, on September 20, 2017.

16. On and after January 1, 2015, T&T provided OSG with the same property usage and services, and OSG used that property and those services; T&T continued to invoice OSG consistent with the terms of the MSA, and OSG continued to pay T&T consistent with those terms, just as they had before.

17. During the period from January 1, 2015 through the date of the accident, OSG never once claimed or suggested to T&T in any way, that OSG did not believe the MSA governed the parties' relationship. Both T&T and OSG continued to act and perform under, and fully consistent with, the terms of the MSA as they had since January 1, 2011.

18. Both T&T and OSG acted as if the MSA had been extended indefinitely after January 1, 2015. Shortly after that date, the parties discussed a formal renewal of the MSA, and OSG advised that it considered that the MSA continued on a "month-to-month" "evergreen" basis. There was never any suggestion of modification of any material term of the MSA, including without limitation the indemnity and insurance terms. A true and correct copy of an email from OSG to this effect is attached as Exhibit 6.

19.     It was only after the accident of September 20, 2017, that OSG began to suggest that the MSA no longer governed the parties' relationship, and specifically, that the indemnity and insurance provisions of the MSA did not apply to the claims arising out of the accident.

20.     Had OSG expressed any doubt whatsoever about the force and effect of the terms of the MSA after January 1, 2015 (rather than acting in the opposite fashion, i.e., that it considered those terms in full force and effect) T&T would never have allowed OSG or its representatives, employees, or contractors onto the Premises.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May _7_ , 2018 in Galveston, Galveston County, Texas.

_____
Kevin Teichman

### T&T Offshore, Inc.
### Master Services Agreement

This agreement made and entered into as of the 1st day of January, 2011 (the "Agreement") by and between T&T Offshore, Inc. 9723 Teichman Road, Galveston, TX 77554 ("T&T") and OSG Lightering LLC, 363 N. Sam Houston Parkway East, Suite 890, Houston, TX 77060 ("Client"). T&T is an independent contractor engaged in providing offshore launch services and related businesses. Client requires certain services from T&T and may in the future require additional goods and/or services from T&T. The parties intend that this contract shall govern the provision of goods and services by T&T to Client. This Agreement supersedes all prior agreements, oral agreements and negotiations between the parties. In the event the terms of this Agreement disagree with the terms of any purchase order or similar document, the terms of this Agreement shall control, unless the parties hereto expressly agree to vary the terms hereof in a writing signed by an authorized representative of Client and an officer of T&T. The execution of an agreement to vary the terms hereof or the use of a different form of agreement for a particular project shall not be construed to vary the terms hereof for any other ongoing or future project(s), nor shall there be any implication by course of dealing that the parties intended for any terms other than those set out in this Agreement to apply to any particular project, in the absence an agreement so stating signed in advance of the project.

**1. Authority to act on behalf of Client.** The person signing below hereby warrants that he or she is authorized to execute this Agreement on behalf of Client. T&T is authorized to provide goods and services to Client pursuant to the terms hereof upon the oral or written request of a Senior Employee of Client, such Senior Employees as designated by Client in Exhibit A, and modified in writing by Client from time to time. T&T is authorized to respond to a request from



EXHIBIT
1

*K.T.*

such Senior Employees and Client agrees to be bound hereby for all goods and services provided.

**2. Goods and Services Provided by T&T.**  Client intends to operate an offshore lightering service with workboats and equipment based in Galveston, Texas.  Client anticipates that this service will employ two or more workboats and require storage for fenders, hoses and related equipment for such workboats and such offshore lightering services.

For the sum of $16,500 per month paid by Client to T&T, T&T agrees to provide the following:

**a. Wharfage and Storage areas:**  T&T will provide wharf space where up to a total of three (3) of Client's offshore workboats of up to 200 feet in length may simultaneously be safely moored always afloat.  T&T may require Client's or its sublessee's workboats to moor abreast of one another or other workboats utilizing the Facilities as defined herein; provided, however, that T&T shall upon Client's request promptly move any such other vessels to allow Client's or its sublessee's vessels to put to sea.  When requested by T&T, Client shall promptly move and shall cause any sublessee of Client to move its or their vessels to allow another vessel at the Facilities to put to sea.  T&T will provide storage space at said location for Client's ancillary equipment including, fenders, cargo hoses, shipping containers and parking for Client's chartered workboat personnel, representatives and customers per Exhibit B.

T&T will also provide approximately 5,000 square feet of warehouse for client's use.  It is expressly understood that while wharfage and storage space sufficient for the above purposes will be provided, such space will also be used for the mooring of T&T vessels, vessels of its other clients and storage of equipment owned by T&T and others.  The wharf, storage and warehouse space for Client's use will be hereinafter referred to as the "Facilities."  The Facilities will be located on Pelican Island in the Port of Galveston, also known as 2915 Todd Road.  T&T

12/01/2002

will ensure that Client and its duly authorized employees and contractors have access at all times to the Facilities. Client and its duly authorized employees and contractors will abide by T&T's Facility Security Plan at all times.

**b. Dockside Services.**  T&T will ensure that adequate labor is available at the Facilities to accomplish such tasks as Client may reasonably require, including loading and discharging equipment from Client's workboats, general repairs to Client's equipment and the like. Client and its sublessees shall utilize T&T's services while at the Facilities.  T&T will ensure that a crane of at least 50 ton capacity and a forklift of at least 4000 pound capacity is available at the Facilities at all times.  Should Client require labor at the Facilities, Client shall make its requirements known to T&T as soon as possible to assist T&T in properly scheduling personnel. T&T requires a minimum of 1 hour notice during its regular business hours and a minimum of 2 hours notice outside of its regular business hours.  Skilled services (diving, welding, fitting, emergency response, etc.) that are available from T&T affiliated companies shall be billed in accordance with the affiliated company's published rate schedule (but shall not be marked up by T&T).   In the event Client requests T&T to call out laborers or operators outside normal business hours when such personnel are not already available on site, a 2 hour minimum shall apply, with time billed in half hour increments.  During normal business hours and after hours if personnel are available on site, time shall be billed in half hour increments, with a minimum of one hour.  Rates for dockside services are as follows:

Crane, 50 ton (operator included) $175/hr. straight time, $195/hr. overtime;

Forklift, 4000 pound capacity (operator included) $50/hr Straight time, $70/hr overtime;

Ordinary Laborer $45.00/hr straight time, $67.50/hr overtime;

Labor and materials from affiliated companies:  as per affiliate's published rate sheet;

Labor and materials from outside companies: Cost plus 15%;

Straight time will be charged 0700-1530, Monday to Friday, U.S. national holidays excepted. All other times are overtime.

All of T&T's services shall be performed in a workmanlike and diligent manner, in full compliance with all applicable laws, rules, and regulations, and T&T shall protect, defend, indemnify, and hold harmless Client for any breach or failure to comply therewith; however, this indemnity obligation is subject in all respects to the indemnity and insurance requirements set out in paragraphs 11 and 12 hereof, which shall control in the event of a conflict with this paragraph.

**3. Client Obligations.**

**a. Utilities.**   Client shall be responsible for payment of all its utilities services for the Facility including, but not limited to, electric, water, phone, gas etc.

**b. Fencing/Enclosing.**   Client shall be responsible for all costs and expenses for fencing/enclosing the storage area.

**c. Build-out.** Client shall be responsible for all costs and expenses for the build-out of its office area including utilities.

**4. Hire of Client's Workboats.** It is anticipated that from time to time, Client's workboats may not be fully employed in connection with the support of Client's lightering operations.  T&T agrees to attempt to develop markets for the use of Client's workboats during times that they are not engaged in Client's lightering operations; however, it is expressly understood that T&T is in the business of offering its own vessels for hire and will at all times give preference to its own vessels when they are available and able to perform a particular undertaking.   In consideration of the mutual promises herein, Client agrees that T&T shall have the exclusive right to employ

Client's workboats in trades involving the delivery of persons, equipment, supplies, cargo, water or any other goods to vessels off the Texas Coast (excepting lightering fenders, hoses and personnel directly associated with Client's lightering operations) and Client shall not (either directly, by way of sub-charter, through a broker or otherwise) permit its workboats to be used in these trades other than as may be arranged through T&T in accordance with this paragraph. As used in the preceding sentence "vessels" does not include vessels engaged in the exploration or production of hydrocarbons on the outer continental shelf of the United States. Except as expressly provided herein, the agreement of T&T to act as agent or broker for Client and Client's agreement to so utilize T&T will be on a non-exclusive basis. T&T will be responsible for setting the rates for the customers it arranges, billing for services and collecting payment.

As consideration for T&T's services in connection therewith, T&T will be entitled to any revenues derived therefrom in excess of $300.00 per hour for hourly billed jobs. T&T will remit to Client $300.00 multiplied by the number of hours the vessel is engaged on an hourly billed trip within 10 days of collecting payment from the customer. In the event a job is to be billed on a daily rate or on some other basis, T&T and Client will agree in advance, and in writing, as to the allocation of revenues. In the event T&T is forced to take legal or other action to collect from a customer, T&T and Client will share pro rata in the cost of collection and any recovery. It is expressly understood that in connection with the arrangement of employment of Client's workboats by third parties, T&T will function as an agent or broker and not as a charterer of Client's vessel. In the event the charter hire paid by Client for the use of a workboat increases due to an escalation provision in its charter, the $300.00 per hour charge referred to above will be increased by the same percentage that Client's charter hire increases pursuant to the escalation provision. In the event a new charter is entered by Client for the use of the same or other

12/01/2002



workboats, the parties will by amendment hereto designate the hourly rate for use of Client's workboats under its new charter.

**5. Independent Contractor.** The parties affirm that T&T is an independent contractor. T&T will at all times have the authority to and shall control the details of the work to be performed by it. All T&T personnel shall at all times be under the sole direction of T&T.

**6. Waste Disposal.** Client agrees that it is the owner of all wastes generated as a consequence of any work performed by T&T under this Agreement, including, without limitation, oil, oily wastes, oily sorbents, hazardous wastes, hazardous substances or other contaminated materials generated as a consequence of the operation of Client's workboats, hose testing or similar activities. T&T shall not be considered a generator, transporter, storer, treater or disposal facility or responsible party with respect to any oil, hazardous materials or hazardous wastes as those terms are used in the Oil Pollution Act of 1990 (OPA), the Resource Conservation and Recovery Act (RCRA), as amended, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), or as those or similar terms are used in any similar state law governing transportation, treatment, storage and disposal of wastes. Client agrees it will be considered the generator of all wastes and will remain responsible at all times for the handling, transportation, treatment, storage and disposal of said wastes. Client will direct T&T as to how its wastes are to be handled. Upon Client's request, T&T will assist Client in arranging for the characterization of wastes and their transportation, treatment, storage and/or disposal. The failure of Client to instruct T&T as to the disposition of wastes within 7 days of T&T's written request for instructions, shall constitute Client's appointment of T&T as its authorized agent to execute any required documents and manifests in Client's name and make arrangements for the transportation, treatment, storage and disposal of Client's wastes on Client's behalf and at

12/01/2002



Client's expense, and Client agrees to pay the reasonable costs and attorneys fees incurred by T&T in connection therewith.

**Client agrees to indemnify, defend and hold T&T, its partners, parents, subsidiaries, affiliates, interrelated companies and the Board of Trustees of the Galveston Wharves, and the City of Galveston, harmless from all costs, claims and liability associated with the handling, transportation, treatment, storage and disposal of wastes associated with any project covered by this Agreement.** The provisions of this section shall survive the termination of this Agreement and will continue to bind Client, its successors and assigns.

**7. Payment, Security and Interest.** Wharfage and storage fees will be payable monthly in advance on the first day of each month. Fees for other goods and services provided hereunder will be billed weekly in arrears. Unless otherwise agreed in a writing signed by an officer of T&T, all invoices for other goods and services presented by T&T hereunder will be payable in full without discount 30 days from the date of the invoice. If an invoice is not paid in full within 30 days of the date of the invoice (or if advance payment is not made for wharfage and storage fees on the first day of a month), interest will accrue at the rate of 1.5% per month on any unpaid balance commencing as of the date of the invoice becomes due and payable, or as of the first day of the month in the case of dockage and dispatch fees. Unless Client shall notify T&T in writing setting out the particulars of a disputed charge within 30 days of the date of the invoice containing that charge, all charges will be deemed proper and payable without discount or credit. The existence of a dispute as to a particular item will not excuse the timely payment of such sums as are not in dispute. In the event T&T provides necessary goods and services to a workboat hereunder, it is expressly agreed that T&T shall be entitled to a maritime lien against said workboat to secure payment for necessaries provided. T&T also reserves its rights to such

liens as may be available to landlords, warehousemen, mechanics, materialmen and others under law.

**8. Default by Client.** In the event of a default relating to payment of an invoice, in addition to all other rights T&T may have under law, in the event payment has not been received by T&T within 60 days from the date of an invoice, T&T may terminate this Agreement and recover all damages allowable at law and all remedies in equity to which it is entitled. In the event of any other default of Client's obligations hereunder that remain uncured 15 days after written notice thereof has been given to Client by T&T, T&T may terminate this Agreement and recover all damages allowable at law and all remedies in equity to which it is entitled. In the event T&T is required to retain counsel to enforce its rights hereunder or as a result of Client's breach of this Agreement, Client agrees to pay T&T's reasonable costs associated therewith, including, without limitation, its attorneys' fees.

**9. Default by T&T.** In the event of a default by T&T relating to providing the wharfage and storage or dockside services described hereunder that remains uncured 15 days after written notice thereof has been given by Client to T&T, Client may terminate this Agreement and recover all damages allowable at law and all remedies in equity to which it is entitled. In the event Client is required to retain counsel to enforce its rights hereunder or as a result of T&T's breach of this agreement, T&T agrees to pay Client's reasonable costs associated therewith, including, without limitation, its attorneys' fees.

**10. Premises Damage or Destruction.** If, during the term of the Agreement, the whole of, or any portion of, the Premises is damaged or destroyed by fire, windstorm, hurricane or any other casualty, T&T shall commence Restoration Work within ninety (90) days after such damage or destruction, and shall continue with due diligence therewith. T&T shall repair/restore and/or

12/01/2002

rebuild the premises to substantially the same condition and character as immediately prior to such damage or destruction. If T&T does not commence the Restoration Work within (30) days after such damage or destruction, Client may, as its sole remedy, terminate this Agreement. Termination of this Agreement pursuant to this provision shall not constitute a default by T&T or Client.

**11. Indemnity.** (A) IN ANY CASE OF ILLNESS, INJURY, DEATH, LOSS OR PROPERTY DAMAGE TO EMPLOYEES AND OTHER PERSONNEL OF T&T OR ITS CONTRACTORS OR SUBCONTRACTORS OF ANY TIER OR IN ANY CASE OF LOSS OR LOSS OF USE OR DAMAGE TO ITS OR THEIR LEASED OR OWNED PROPERTY, FACILITIES, OR EQUIPMENT, T&T SHALL RELEASE, DEFEND, PROTECT, INDEMNIFY AND HOLD HARMLESS CLIENT FROM AND AGAINST ANY LOSS, COST, CLAIM, LIABILITY, SUIT, JUDGMENT, AWARD OR DAMAGE, INCLUDING REASONABLE ATTORNEY'S FEES AND EXPENSES INCLUDING EXPERT WITNESS FEES, ON ACCOUNT OF SUCH ILLNESS, INJURY, DEATH, LOSS OR DAMAGE.

(B)   IN ANY CASE OF ILLNESS, INJURY, DEATH, LOSS OR PROPERTY DAMGE TO ANY THIRD PARTY, EMPLOYEES AND OTHER PERSONNEL OF CLIENT OR ITS OR THEIR CONTRACTORS OR SUBCONTRACTORS OF ANY TIER AND ITS/THEIR INVITEES, OTHER THAN T&T AND ITS CONTRACTORS AND SUBCONTRACTORS OF ANY TIER, OR IN ANY CASE OF LOSS OR LOSS OF USE OR DAMAGE TO ITS OR THEIR LEASED OR OWNED EQUIPMENT, CLIENT SHALL RELEASE, DEFEND, PROTECT, INDEMNIFY AND HOLD HARMLESS T&T AND THE BOARD OF TRUSTEES OF THE GALVESTON WHARVES AND THE CITY OF GALVESTON FROM AND AGAINST ANY LOSS, COST, CLAIM, LIABILITY, SUIT, JUDGMENT, AWARD OR

KT
WJ

DAMAGE, INCLUDING REASONABLE ATTORNEY'S FEES AND EXPENSES INCLUDING EXPERT WITNESS FEES, ON ACCOUNT OF SUCH ILLNESS, INJURY, DEATH, LOSS OR DAMAGE.

(C)     THE INDEMNITY OBLIGATIONS, RELEASES, AND EXCLUSIONS AND LIMITATIONS OF DAMAGES SET FORTH IN THIS AGREEMENT SHALL APPLY TO ALL CLAIMS, LOSSES, COSTS, LIABILITIES, AND DAMAGES WHICH ARISE OUT OF, RESULT DIRECTLY OR INDIRECTLY FROM, ARE INCIDENT TO OR CONNECTED WITH THE PERFORMANCE OF THE WORK UNDER THIS AGREEMENT OR BREACH OF ANY TERMS OR CONDITIONS OF THIS AGREEMENT AND (EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT TO BE TO THE EXTENT OF) SHALL APPLY REGARDLESS OF WHETHER CAUSED OR CONTRIBUTED TO BY NEGLIGENCE OR OTHER FAULT (INCLUDING SOLE, JOINT, OR CONCURRENT NEGLIGENCE BUT EXCLUDING GROSS NEGLIGENCE OR WILFUL MISCONDUCT) OF ANY OF THE PARTIES SO INDEMNIFIED, RELEASED, OR OTHERWISE RELIEVED OF RESPONSIBILITY OR LIABILITY FOR DAMAGES IN THIS AGREEMENT OR THEIR CONTRACTORS OR SUBCONTRACTORS OF ANY TIER OR INVITEES OR ARE BASED ON ANY OTHER THEORY OF LEGAL LIABILITY, INCLUDING STRICT LIABILITY, DEFECT IN PREMISES, MATERIALS, OR EQUIPMENT, OR THE UNSEAWORTHINESS OR OTHER FAULT OF ANY VESSEL, OR· ANY OTHER ANTICIPATED OR UNANTICIPATED EVENT OR CONDITION, AND REGARDLESS OF WHETHER PRE-EXISTING THE EXECUTION OF THIS AGREEMENT.

(D)     AS USED IN THIS AGREEMENT WITH RESPECT TO, INDEMNITY OBLIGATIONS, RELEASES, AND THE OBLIGATION TO NAME AS ADDITIONAL

12/01/2002



INSURED, WAIVE SUBROGATION, AND MAKE POLICIES OF INSURANCE PRIMARY, "CLIENT" SHALL MEAN COLLECTIVELY CLIENT, ITS PARTNERS, PARENTS, SUBSIDIARIES, AFFILIATES, AND INTERRELATED COMPANIES, AND ITS JOINT VENTURERS AND CUSTOMERS, AND THOSE CONTRACTORS AND SUBCONTRACTORS OF CLIENT (OTHER THAN T&T AND ITS CONTRACTORS AND SUBCONTRACTORS OF ANY TIER) DESIGNATED TO T&T IN WRITING, AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, AND INSURERS THEREOF, AND "T&T" SHALL MEAN COLLECTIVELY T&T, ITS PARTNERS, PARENTS, SUBSIDIARIES, AFFILIATES, INTERRELATED COMPANIES, THE LESSORS OF THE FACILITIES TO T&T, AND THOSE CONTRACTORS AND SUBCONTRACTORS OF T&T DESIGNATED TO CLIENT IN WRITING, including but not limited to TUG JOSEPHINE, INC.; T&T MARINE, INC.; T&T MARINE WAYS, INC.; T&T INTERNATIONAL FIRE & SALVAGE, LLC; T&T OFFSHORE, INC.; AND T&T MARINE SALVAGE, INC.; AND THE RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, AND INSURERS THEREOF, AND ANY AND ALL VESSELS OWNED, CHARTERED, MANAGED, OR OPERATED BY T&T. THE PARTIES INDEMNIFIED IN THIS AGREEMENT SHALL HAVE THE RIGHT TO PARTICIPATE THROUGH COUNSEL OF THEIR OWN CHOOSING IN THE DEFENSE OF ANY INDEMNIFIED CLAIMS AT THEIR OWN EXPENSE.

(E)    THE OBLIGATIONS OF T&T AND CLIENT TO SUPPLY THE INSURANCES REQUIRED UNDER THIS AGREEMENT SHALL BE SEPARATE AND INDEPENDENT COVENANTS FROM THE OTHER COVENANTS AND AGREEMENTS OF THE PARTIES UNDER THIS AGREEMENT. THE LIMITS OF INSURANCE PROVIDED FOR IN THIS

AGREEMENT SHALL NOT LIMIT THE AMOUNT OF THE CONTRACTUAL INDEMNITIES PROVIDED FOR HEREIN.

(F) IF IT IS JUDICIALLY DETERMINED THAT THE MONETARY LIMITS OR SCOPE OF COVERAGE OF THE INSURANCES REQUIRED UNDER THIS AGREEMENT OR OF THE INDEMNITIES VOLUNTARILY ASSUMED UNDER THIS SECTION EXCEED THE MAXIMUM MONETARY LIMITS OR SCOPE PERMITTED UNDER APPLICABLE LAW, IT IS AGREED THAT SAID INSURANCE REQUIREMENTS OR INDEMNITY SHALL AUTOMATICALLY BE AMENDED TO CONFORM TO THE MAXIMUM MONETARY LIMITS AND SCOPE PERMITTED UNDER SUCH LAW.

(G) THE INDEMNITY OBLIGATIONS, RELEASES, AND EXCLUSIONS AND LIMITATIONS OF DAMAGES SET FORTH IN THIS AGREEMENT THAT APPLY TO AN EVENT OR CONDITION THAT OCCURS DURING THE PERFORMANCE OF THIS AGREEMENT SHALL SURVIVE AND NOT BE AFFECTED BY THE EXPIRATION OR TERMINATION OF THIS AGREEMENT. THE PARTIES INDEMNIFIED, RELEASED, OR OTHERWISE RELIEVED OF RESPONSIBILITY OR LIABILITY FOR DAMAGES IN THIS AGREEMENT SHALL BE ENTITLED TO REASONABLE ATTORNEYS FEES AND COSTS INCURRED IN ASSERTING OR ENFORCING THE INDEMNITY OBLIGATIONS, RELEASES, AND EXCLUSIONS AND LIMITATIONS OF DAMAGES SET FORTH IN THIS AGREEMENT AGAINST THE OTHER PARTY. It is expressly acknowledged that this provision in no way effects or limits the indemnity obligations of Section 6 addressing waste disposal.

**12. Insurance.** T&T agrees to maintain wharfingers', ship repairer's legal liability, commercial general liability, pollution, worker's compensation and employer's liability, automobile liability,



and excess insurance coverage, with total limits of not less than $10,000,000 per occurrence except for worker's compensation coverage which shall have statutory limits, on terms and conditions as reflected in T&T's insurance certificate attached hereto as Exhibit "C", including coverage for the liabilities T&T has assumed in Section 11 above and to name Client as an additional assured with waiver of subrogation in said policies to the extent, but only to the extent, of the liabilities expressly assumed by T&T in Section 11. T&T agrees that as to the liabilities assumed by it under Section 11, the insurance of T&T will be endorsed to provide that its policies will be primary to any policies of Client providing Client protection for the same claim and to provide that Client will be given at least 30 days notice in the event the policy is cancelled, not renewed, or materially altered for any reason.

Client agrees to maintain hull and machinery, protection and indemnity, and pollution insurance on its workboats, and charterer's legal liability, commercial general liability, worker's compensation and employer's liability, automobile liability, and excess insurance coverage, with total limits of not less than $10,000,000 per occurrence except for the hull and machinery policy which shall have limits equal to the agreed value of the vessels and worker's compensation coverage which shall have statutory limits, on terms and conditions as reflected in Client's insurance certificate attached hereto as Exhibit "D", including coverage for the liabilities Client has assumed in Sections 6 and 11 above and to name T&T as an additional assured with waiver of subrogation in said policies to the extent, but only to the extent, of the liabilities expressly assumed by Client in Sections 6 and 11. Client agrees that as to the liabilities assumed by it under Section 11, the insurance of Client will be endorsed to provide that its policies will be primary to any policies of T&T providing T&T protection for the same claim and to provide that T&T will be given at least 30 days notice in the event the policy is canceled, not renewed, or

materially altered for any reason. The indemnity obligations of paragraphs 6 and 11 are not limited to the amount of insurance available and will not be affected by the inability to collect on any policy of insurance. The parties hereto agree to provide the other with certificates demonstrating the existence of the insurance required herein, with the required endorsements and limits, on or before execution of this Agreement.

**13. Waiver.** No failure of either party to require strict compliance with any term or requirement of this Agreement in any particular instance will be deemed a waiver of that party's right to insist on strict compliance on any other instance.

**14. Term.** This Agreement shall commence on the date written below and remain in effect for four (4) years from January 1, 2011. It is expressly understood and agreed that T&T is entering into a long term lease of property encompassing more space than is needed by T&T for its other business needs and its planned growth during the term thereof in reliance on the execution of this Agreement with Client. In the event this Agreement is terminated by Client before the fourth anniversary, the prospects for T&T to be able to find an alternate tenant or sublessee for the space being set aside for Client for the remainder of the four year term may be remote. In recognition of this, the parties agree that in the event Client terminates this Agreement before the end of the full four (4) year term (except as provided in paragraph 10, Premises Damage or Destruction), Client will pay to T&T as liquidated damages $12,000.00 for each month or part of a month that this Agreement is terminated short of the full four (4) year term. Termination of this Agreement will not affect the liability of either party hereunder for liabilities arising under paragraphs, 3, 6, 7, 11 or 12, their obligations arising hereunder prior to the termination hereof, or for the expenses of demobilizing any personnel or equipment in use at the time of termination.

**15.    Sublease.**    In the event Client is not then exercising its option to use berthing space for more than three workboats, Client shall have the right to sublease its mooring rights hereunder for the mooring of other workboats not to exceed 200 feet in length. For so long as Client is subleasing berthing space, Client shall be limited to three vessels, whether owned, operated or chartered by Client or its sublessees. Subleasing shall be subject to the approval of T&T, such approval not to be unreasonably withheld, provided that Client requires the said sublessee to enter into a sublease agreement consistent with the terms and conditions hereof. The sublease agreement must provide that the sublessee releases and agrees to indemnify T&T and the Board of Trustees of the Galveston Wharves and the City of Galveston and to maintain insurance policies on substantially the same conditions required of Client as set forth in Sections 11 and 12 hereof including the furnishing of certificates of insurance to T&T prior to the berthing of any of such sublessee's vessels at the Facilities. It is agreed that Client will work in good faith with T&T to address concerns or problems with a sublessee's use of the berthing space.   Any workboat moored by Client or its sublessee, if any, shall be capable of remaining safely afloat at the berthing space, in good operating condition subject to any needed repairs which shall be undertaken without unreasonable delay, and for inspected vessels have valid certificates of inspection issued by the appropriate governmental agencies, and any such workboat not in such condition shall be promptly removed from the Facilities at Client's expense without liability to T&T.

**16.    Security.**    Access to the Facilities shall be subject to the provisions of all current and future laws, regulations, policy statements and other government guidelines pertaining to waterfront facility security and access and any facility security plan adopted by T&T pursuant thereto.    The security requirements imposed on Client's personnel, customers, vendors,

12/01/2002

sublessees, etc. shall in no case be more restrictive than is necessary to fully comply with said laws, regulations, policy statements or guidelines.

**17.** **Miscellaneous.** This Agreement shall be governed and construed in accordance with the general maritime laws of the United States, and to the extent maritime law is not applicable then by the laws of the State of Texas. This Agreement constitutes the entire agreement between the parties concerning this subject matter, and may not be amended, modified, or waived except in writing signed by the parties. This Agreement shall inure only to the benefit of the parties hereto and their successors and permitted assigns, and may not be assigned by either party without the other party's prior written consent. Should any clause or portion of this Agreement be deemed invalid, void, or otherwise unenforceable, the remainder of this Agreement shall remain in full force and effect as written. Notices under this Agreement shall be given to the parties at their addresses indicated in the opening recitals hereof. Notices shall be effective upon receipt. This Agreement may be signed in multiple counterparts, each of which taken together shall constitute one and the same instrument. Facsimile signature shall have the effect of delivered originals.

Signed as of the 10th day of December, 2010 by:

T&T MARINE SALVAGE, INC.

by: KEVIN TEICHMAN

its: VICE PRESIDENT

OSG LIGHTERING, LLC.

by: William E. Doolittle

its: DIRECTOR OFFSHORE & TECHNICAL SERVICES

# EXHIBIT A

## SENIOR EMPLOYEES

1)        Managing Director

2)        Director, Offshore & Technical Services

3)        Director, Marketing

# EXHIBIT B

## THE FACILITIES

The existing buildings will be used as the limits of the OSG designated

12/01/2002

ADDENDUM ONE
TO THE
OSG LIGHTERING LLC AND T&T OFFSHORE, INC.
MASTER SERVICES AGREEMENT
DATED JANUARY 1, 2011

The Agreement between OSG Lightering LLC and T&T Offshore, Inc., dated January 1, 2011 is hereby amended, effective May 1, 2013 as follows:

**2. Goods and Services Provided by T&T.** Client intends to operate an offshore lightering service with workboats and equipment based in Galveston, Texas. Client anticipates that this service will employ two or more workboats and require storage for fender, hoses and related equipment for such workboats and such offshore lightering services.
For the sum of **$15,500** per month paid by Client to T&T, T&T agrees to provide... (remainder of clause is unchanged).

All other terms and conditions of the Agreement remain in full force and effect.

Signed as of this day April 17, 2013 by:

T&T Offshore, Inc.                                    OSG Lightering LLC

_____                    _____

Kevin Teichman                                       Jim Enright
Print Name                                              Print Name

J.P.                                                         Managing Director
Title                                                         Title

# Pelican Island – 2915 Todd Road



49,300 square feet
73.7%

17,600 square feet
26.3%

EXHIBIT
2

# Ratio of Maritime Service Charges to Total Charges: 15.65% To 84.35%

**Non-Maritime Services:**

- Office
- Warehouse
- Outside storage
- Parking
- Dock
- Non-vessel related equipment and labor

**$1,103,193**



84.35%

15.65%

**Maritime Services:**

- Vessel Loading/ Unloading Services

**$204,695**

**EXHIBIT 3**

| | | |
|---|---|---|
| **Total Maritime Services:** | **$204,695** | **15.65%** |
| **Total Non-Maritime Services:** | **$1,103,193** | **84.35%** |
| **TOTAL Invoiced by T&T to OSG:** | **$1,307,888** | **100.00%** |

# Monthly Summary of Charges to OSG for Maritime Services

## 2013

| Month | Total Invoiced | Total Maritime Related | Percentage |
|---|---|---|---|
| 2013-01 | 22,167.49 | 3,000.00 | 13.53% |
| 2013-02 | 28,987.02 | 6,562.50 | 22.64% |
| 2013-03 | 34,932.26 | 14,262.50 | 40.83% |
| 2013-04 | 23,133.37 | 5,437.50 | 23.51% |
| 2013-05 | 23,308.01 | 5,125.00 | 21.99% |
| 2013-06 | 23,798.24 | 3,750.00 | 15.76% |
| 2013-07 | 23,712.90 | 4,500.00 | 18.98% |
| 2013-08 | 20,118.53 | 1,500.00 | 7.46% |
| 2013-09 | 24,187.88 | 0.00 | 0.00% |
| 2013-10 | 24,755.17 | 2,750.00 | 11.11% |
| 2013-11 | 21,109.03 | 2,750.00 | 13.03% |
| 2013-12 | 27,186.62 | 8,927.50 | 32.84% |
| TOTALS | 297,396.52 | 58,565.00 | 19.69% |

## 2014

| Month | Total Invoiced | Total Maritime Related | Percentage |
|---|---|---|---|
| 2014-01 | 29,923.14 | 8,500.00 | 28.41% |
| 2014-02 | 26,989.55 | 7,500.00 | 27.79% |
| 2014-03 | 21,224.64 | 3,250.00 | 15.31% |
| 2014-04 | 20,689.81 | 2,750.00 | 13.29% |
| 2014-05 | 22,456.18 | 5,500.00 | 24.49% |
| 2014-06 | 27,237.14 | 9,125.00 | 33.50% |
| 2014-07 | 19,448.64 | 0.00 | 0.00% |
| 2014-08 | 25,999.45 | 8,505.00 | 32.71% |
| 2014-09 | 20,067.68 | 1,500.00 | 7.47% |
| 2014-10 | 20,523.19 | 1,250.00 | 6.09% |
| 2014-11 | 20,511.86 | 3,250.00 | 15.84% |
| 2014-12 | 23,927.14 | 3,625.00 | 15.15% |
| TOTALS | 278,998.42 | 54,755.00 | 19.63% |

## 2015

| Month | Total Invoiced | Total Maritime Related | Percentage |
|---|---|---|---|
| 2015-01 | 24,445.90 | 2,000.00 | 8.18% |
| 2015-02 | 19,641.36 | 500.00 | 2.55% |
| 2015-03 | 22,726.48 | 3,000.00 | 13.20% |
| 2015-04 | 22,787.91 | 2,625.00 | 11.52% |
| 2015-05 | 21,350.44 | 0.00 | 0.00% |
| 2015-06 | 21,697.38 | 2,000.00 | 9.22% |
| 2015-07 | 21,448.75 | 500.00 | 2.33% |
| 2015-08 | 18,149.94 | 0.00 | 0.00% |
| 2015-09 | 22,526.80 | 2,500.00 | 11.10% |
| 2015-10 | 24,127.02 | 4,875.00 | 20.21% |
| 2015-11 | 18,205.42 | 0.00 | 0.00% |
| 2015-12 | 20,408.22 | 1,250.00 | 6.12% |
| TOTALS | 257,515.62 | 19,250.00 | 7.48% |

## 2016

| Month | Total Invoiced | Total Maritime Related | Percentage |
|---|---|---|---|
| 2016-01 | 22,682.51 | 4,375.00 | 19.29% |
| 2016-02 | 21,971.96 | 2,250.00 | 10.24% |
| 2016-03 | 17,947.53 | 0.00 | 0.00% |
| 2016-04 | 25,643.08 | 3,500.00 | 13.65% |
| 2016-05 | 21,350.44 | 2,250.00 | 10.54% |
| 2016-06 | 19,021.18 | 1,250.00 | 6.57% |
| 2016-07 | 21,697.63 | 1,000.00 | 4.61% |
| 2016-08 | 23,305.55 | 5,000.00 | 21.45% |
| 2016-09 | 23,862.06 | 2,500.00 | 10.48% |
| 2016-10 | 25,826.29 | 7,625.00 | 29.52% |
| 2016-11 | 22,325.72 | 3,750.00 | 16.80% |
| 2016-12 | 19,445.61 | 1,500.00 | 7.71% |
| TOTALS | 265,079.56 | 35,000.00 | 13.20% |

## 2017

| Month | Total Invoiced | Total Maritime Related | Percentage |
|---|---|---|---|
| 2017-01 | 29,240.98 | 2,750.00 | 9.40% |
| 2017-02 | 25,109.65 | 500.00 | 1.99% |
| 2017-03 | 28,355.13 | 9,500.00 | 33.50% |
| 2017-04 | 25,299.53 | 3,250.00 | 12.85% |
| 2017-05 | 29,491.52 | 8,125.00 | 27.55% |
| 2017-06 | 24,258.39 | 4,000.00 | 16.49% |
| 2017-07 | 30,806.21 | 6,875.00 | 22.32% |
| 2017-08 | 19,908.94 | 1,500.00 | 7.53% |
| TOTALS | 212,470.35 | 36,500.00 | 17.18% |

EXHIBIT 4

**EXHIBIT 5**

## February
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 |  |  |

## March
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |  |  |  |  |  |  |

## April
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 |  |  |  |  |

## May
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |  |

## June
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 |  |  |  |  |  |  |

## July
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |  |  |  |

## August
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

## September
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 |  |  |  |  |  |

## October
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |  |  |

## November
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

## December
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |  |  |  |  |

## 2013
| | |
|---|---|
| **Duration:** | **334 days** |
| **Maritime Services:** | **57 days** |
| **No Maritime Services:** | **277 days** |

**277 days**
NO Maritime Services Provided to OSG
**83%**



**57 days**
T&T Loading / Unloading Services Provided to OSG
**17%**

# During 2014 - T&T Provided Maritime Services to OSG for Only 50 of 365 Days



| 2014 | | | 315 days | 50 days |
|---|---|---|---|---|
| **Duration:** | **365 days** | | NO Maritime Services | T&T Loading / Unloading |
| **Maritime Services:** | **50 days** | | Provided to OSG | Services Provided to OSG |
| **No Maritime Services:** | **315 days** | | **86.3%** | **13.7%** |



# During 2015 - T&T Provided Maritime Services to OSG for Only 22 of 365 Days

### January
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | **14** | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | **31** |

### February
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | **10** | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |

### March
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | **3** | 4 | **5** | **6** | 7 |
| 8 | 9 | 10 | 11 | **12** | 13 | 14 |
| 15 | 16 | **17** | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |   |   |   |   |

### April
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | **10** | **11** |
| 12 | 13 | 14 | 15 | 16 | **16** | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 |   |   |

### May
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |   |   |   |   |   |   |

### June
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | **4** | **5** | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | **17** | 18 | 19 | 20 |
| 21 | 22 | **23** | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 |   |   |   |   |

### July
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | **6** | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |   |

### August
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

### September
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 |   |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | **28** | **29** | **30** |   |   |   |

### October
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| **4** | 5 | 6 | **7** | **8** | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | **21** | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### November
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 |   |   |   |   |   |

### December
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| **20** | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |



| 2015 | | |
|---|---|---|
| Duration: | **365 days** | |
| Maritime Services: | **22 days** | |
| **No Maritime Services:** | **343 days** | |

**343 days**
NO Maritime Services
Provided to OSG
**94%**

**22 days**
T&T Loading / Unloading
Services Provided to OSG
**6%**

# During 2016 - T&T Provided Maritime Services to OSG for Only 38 of 365 Days

## January
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |   |   |   |   |   |   |

## February
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 |   |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 |   |   |   |   |   |

## March
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

## April
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

## May
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |   |   |   |   |

## June
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 |   |   |

## July
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |   |   |   |   |   |   |

## August
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

## September
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 |   |

## October
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

## November
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |   |   |   |

## December
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

## 2016
| | |
|---|---|
| Duration: | **365 days** |
| Maritime Services: | **38 days** |
| **No Maritime Services:** | **327 days** |

**327 days**
NO Maritime Services
Provided to OSG
**89.6%**



**38 days**
T&T Loading / Unloading
Services Provided to OSG
**10.4%**

### January
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

### February
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | | | | |

### March
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

### April
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

### May
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

### June
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

### July
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

### August
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

**2017**
**Duration:** **243 days**
**Maritime Services:** **32 days**
**No Maritime Services: 211 days**

**211 days**
NO Maritime Services
Provided to OSG
**86.8%**



**32 days**
T&T Loading / Unloading
Services Provided to OSG
**13.2%**

# 2013 to 2017 T&T Provided Maritime Services to OSG for Only 199 of 1,672 Days

## 2013
| | |
|---|---|
| **Duration:** | **334 days** |
| **Maritime Services:** | **57 days** |
| **No Maritime Services:** | **277 days** |

**277 days**
NO Maritime Services
Provided to OSG
**83%**

**57 days**
T&T Loading / Unloading
Services Provided to OSG
**17%**

## 2014
| | |
|---|---|
| **Duration:** | **365 days** |
| **Maritime Services:** | **50 days** |
| **No Maritime Services:** | **315 days** |

**315 days**
NO Maritime Services
Provided to OSG
**86.3%**

**50 days**
T&T Loading / Unloading
Services Provided to OSG
**13.7%**

## 2015
| | |
|---|---|
| **Duration:** | **365 days** |
| **Maritime Services:** | **22 days** |
| **No Maritime Services:** | **343 days** |

**343 days**
NO Maritime Services
Provided to OSG
**94%**

**22 days**
T&T Loading / Unloading
Services Provided to OSG
**6%**

## 2016
| | |
|---|---|
| **Duration:** | **365 days** |
| **Maritime Services:** | **38 days** |
| **No Maritime Services:** | **327 days** |

**327 days**
NO Maritime Services
Provided to OSG
**89.6%**

**38 days**
T&T Loading / Unloading
Services Provided to OSG
**10.4%**

## 2017
| | |
|---|---|
| **Duration:** | **243 days** |
| **Maritime Services:** | **32 days** |
| **No Maritime Services:** | **211 days** |

**211 days**
NO Maritime Services
Provided to OSG
**86.8%**

**32 days**
T&T Loading / Unloading
Services Provided to OSG
**13.2%**

## TOTAL from 2013 through 2017
| | |
|---|---|
| **Total Duration:** | **1,672 days** |
| **Total Maritime Services:** | **199 days** |
| **No Maritime Services:** | **1,473 days** |

**1,473 days**
NO Maritime Services
Provided to OSG
**88.1%**

**199 days**
T&T Loading / Unloading
Services Provided to OSG
**11.9%**

**Meyer, David**

---

**Subject:**                              FW: Lease agreement contract expired


**From:** Wrenn, Clayton [mailto:cwrenn@osg.com]
**Sent:** Thursday, January 29, 2015 12:14 PM
**To:** Deborah Crump <dcrump@teichmangroup.com>
**Cc:** Kehm, Cameron <CKehm@osg.com>; Marple, Christy <cmarple@osg.com>
**Subject:** Re: Lease agreement contract expired

Thank you Deborah - we will review soonest. I will need to set up a time to meet with Kevin to discuss in further detail.

I believe our current contract has a provision that facilitates month-to-month lease (evergreen) upon expiration but will have to review to be sure - but rest assured we have not yet considered the option of relocation. We have simply been too busy to address - but intend to ASAP.

We will endeavor to work through the details quickly.

Thank you again,
Clayton



On Jan 29, 2015, at 7:47 AM, Deborah Crump <dcrump@teichmangroup.com> wrote:

> Good morning,
>
> Please find attached 2015 Contract for lease agreement which is currently expired as of December 31, 2014.  Please review, sign and return asap.  Should you have any questions, please don't hesitate to give us a call.
>
> Best Regards,
>
> Deborah Crump
> T & T Marine Salvage, Inc
> T & T Marine, Inc.
> 9723 Teichman Road
> Galveston, Texas 77554
> Office: (409) 744-1222
> Cell: (409) 771-7997
> Email: operations@tandtmarine.com
> 2nd email: dcrump@teichmangroup.com

---

> **From:** Kehm, Cameron [mailto:CKehm@osg.com]
> **Sent:** Wednesday, January 28, 2015 4:29 PM
> **To:** Deborah Crump
> **Cc:** Wrenn, Clayton
> **Subject:** Re: Lease agreement contract expired

1



LLLC DEC000071

Debra good afternoon,

Please send over the new contract to the attention of Ms. Clayton Wrenn.

I have copied her on this email

Regards;

Cameron Kehm
OSG Lightering

Sent from my iPhone

On Jan 28, 2015, at 15:43, Deborah Crump <dcrump@teichmangroup.com> wrote:

> Good afternoon,
>
> Lease agreement between OSG & T&T Marine Salvage, Inc., has expired as of December 31, 2014. We have the new contract ready for signature and need to know the correct person to email it to, can you help me with that? It would greatly be appreciated.
>
> Best Regards,
>
> Deborah Crump
>
> T & T Marine Salvage, Inc
>
> T & T Marine, Inc.
>
> 9723 Teichman Road
>
> Galveston, Texas 77554
>
> Office: (409) 744-1222
>
> Cell: (409) 771-7997
>
> Email: operations@tandtmarine.com
>
> 2nd email: dcrump@teichmangroup.com

LLLC DEC000072